**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-00287-MSK-CBS

MICHAEL DEASY, a Colorado resident,

Plaintiff,

v.

OPTIMAL HOME CARE, INC.,
A Colorado Corporation,

Defendant.

## PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Plaintiff, Michael Deasy ("Mr. Deasy"), hereby responds to Defendant, Optimal Home Care, Inc.'s ("Defendant" or "Optimal"), Motion for Summary Judgment.

## INTRODUCTION

On September 5, 2017, Defendant moved for summary judgment on Mr. Deasy's claim for unpaid overtime under the Fair Labor Standards Act (the "FLSA") on the ground that Mr. Deasy is exempt from the FLSA's overtime requirements under the learned professional exemption. To prove the exemption applies, Defendant must establish that Mr. Deasy was employed "in a bona fide . . . professional capacity." 29 U.S.C. § 213(a)(1). Here, as will be fully shown below, Defendant cannot establish that Mr. Deasy's position as a licensed practical nurse ("LPN") qualifies him as a learned professional exempt from the overtime requirements of the FLSA. Accordingly, Defendant's Motion for Summary Judgment should be denied.

## RESPONSE TO STATEMENT OF UNDISPUTED FACTS

While Defendant has set forth six pages of alleged "undisputed facts," most of these facts are irrelevant to Defendant's Motion for Summary Judgment.  Thus, while Mr. Deasy disputes the majority of what Defendant sets forth in this section, Mr. Deasy will address below only those alleged facts Defendant has identified (in accordance with the Court's procedures set forth in Civ. Practice Standard 7.6.2(c)(1)(C)) as supporting an element of its affirmative defense that Mr. Deasy's claim for overtime is barred by the learned professional exemption to the FLSA's overtime requirements.

## CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

### A.     Burden of Proof and Elements.

Mr. Deasy's claim in this case is for unpaid overtime under the FLSA.  Defendant seeks summary judgment on this claim on the ground that Mr. Deasy is exempt from the FLSA's overtime requirements under the learned professional exemption. Mr. Deasy agrees with Defendant that Defendant bears the burden of proving the exemption applies.  Mr. Deasy further agrees with Defendant's recitation of the elements of this affirmative defense.

### B.     Elements of "learned professional" exemption challenged by Mr. Deasy.

Element 2:  As will be fully shown below, Defendant has not met its burden to establish that the learned professional exemption applies because Defendant has not – and, indeed, cannot – establish that Mr. Deasy's primary duty as a LPN for Defendant was "the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."

1.      As a threshold matter, exemptions under the FLSA are construed narrowly against the employer and a court must find that the claimed exemption falls "plainly and unmistakably" within the terms of the statute. *Lederman v. Frontier Fire Protection, Inc.*, 685 F.3d 1151, 1157-1158 (10th Cir. 2012).

2.      The FLSA exempts from its overtime requirements "any employee employed in a bona fide . . . professional capacity." 29 U.S.C. § 213(a)(1). The Department of Labor regulations further define which employees qualify for the "learned professional" exemption. The regulations provide:

> a) To qualify for the learned professional exemption, an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. The "primary duty" test includes three elements:
>
> (1) The employee must perform work requiring advanced knowledge;
>
> (2) The advanced knowledge must be in a field of science or learning; and
>
> (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. § 541.301(a). Defendant must prove all three elements of this "primary duties" test to meet its burden of showing that Mr. Deasy qualified for the learned professional exemption.

3.      First, Defendant cannot prove elements one and two of the primary duties test, which mandates that Defendant show Mr. Deasy was required to perform work requiring advanced knowledge and the advanced knowledge was in the field of science or learning. Under the Department of Labor regulations,

> "work requiring advanced knowledge" means work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental,

3

> manual, mechanical or physical work. An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances. Advanced knowledge cannot be attained at the high school level."

29 C.F.R. § 541.301(b). This test applies to the type of thinking required of the employee; he or she must not only take in information, which may be a routine procedure, but must also interpret the information. *Id.*

4. To satisfy this requirement, the performance of such work must be the "primary duty," or the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). But time alone is not the only test; the relative importance of the duties, the frequency with which the employee exercises discretion, and the relative freedom from supervision are all relevant considerations. *See Reich v. State of Wyo.,* 993 F.2d 739, 742 (10th Cir. 1993).

5. Here, Mr. Deasy's work does not require the advanced knowledge necessary to meet the first two elements of the "primary duties" test. To start, Mr. Deasy is an LPN, which he became after completing an 11-month training course at the Emily Griffin Opportunity School, a trade school in the Denver metropolitan area. (Affidavit of Michael Deasy, ¶ 2, attached as Ex. 16.) He also completed a two week course to become certified to administer IVs. (*Id.*) This class work is the only formal education Mr. Deasy has obtained beyond high school. (*Id.* at ¶3.) He does not hold any academic degrees. (*Id.*)

6. As a LPN for Optimal, Mr. Deasy provided in-home patient care under the supervision of a RN or physician. (*Id.* at ¶ 6.) While he is trained to identify normal from abnormal in each of the body systems and to identify changes in a patient's condition, when he detects such a change he simply reports the change to the responsible RN or physician for further or "full"

assessment. (*Id.*) He does not exercise judgment to attempt to determine how to treat the issue. (*Id.*) Indeed, he does not, under any circumstances, perform treatments not specifically prescribed by the patient's physician or RN. (*Id.*)

7. While employed by Optimal, Mr. Deasy typically performed the following types of routine tasks for patients:

- Diabetic Management. He checked blood sugar content, discussed diet plans with diabetic patients, and administered the prescribed amount of insulin.
- Wound Management. He redressed and cleaned wounds.
- Sample Collection. He collected samples (urine sample, blood sample, or wound culture) for lab work.
- Medicine Management. He made sure a patient's drugs were organized, and that the patient was taking what was prescribed by his or her physician.

(*Id.* at ¶ 7.)

8. While Mr. Deasy recorded information in the patient's chart, he was not responsible for interpreting the data. (*Id.* at ¶ 8.) The data he collected was in the patient's record for the physician or RN to review and interpret (and to use to revise treatment plans, if necessary). (*Id.*) The work Mr. Deasy did was always under the supervision of the patient's physician or RN. (*Id.*) His job responsibilities did not require him to exercise independent judgment, nor did he do so. (*Id.*)

9. Because Mr. Deasy was not required to perform work requiring advanced

knowledge, Defendant cannot prove elements one and two of the primary duties test.[1] Accordingly, Defendant's Motion for Summary judgment should be denied.

10. Even if Defendant could prove elements one and two of the primary duties test, however, Defendant's Motion for Summary Judgment should still be denied because it cannot establish the third element. Element three requires Defendant to establish that Mr. Deasy's work requires "advanced knowledge . . . customarily acquired by a prolonged course of specialized instruction." *See* 29 C.F.R. § 541.301(a)(3). In determining whether this requirement has been met, courts look to the minimum requirements of the job, not the education actually acquired by the employee. *See Clark v. Centene Co. of Texas, L.P.*, 44 F.Supp.3d 674, 679 (W.D. Tex. 2014) (finding that "[w]hile RNs and nurses with more advanced degrees and certifications are also qualified for and hired for CM [case manager] jobs, the Court's focus in analyzing the availability of the learned professional exemption is on the minimum requirements for the job.") *See also Young v. Cooper Cameron Corp.,* 586 F.3d 201, 206 (2d Cir. 2009) ("If a job does *not* require knowledge customarily acquired by an advanced educational degree—as for example when many employees in the position have no more than a high school diploma—then, regardless of the duties performed, the employee is not an exempt professional under the FLSA."); *Dybach v. State of Fla.*

---

[1] While Defendant cites to *Crowe v. Examworks*, 136 F.Supp.3d 16 (D. Mass. 2015) as supporting its position that Mr. Deasy's position required advanced knowledge, that case is distinguishable. To start, the employees in *Crowe* all held bachelor's degrees and were RNs. *Id.* at 22. The regulations make clear that RNs are generally considered learned professionals, while LPNs (like Mr. Deasy) are not. 29 C.F.R. § 541.301(e)(2). Moreover, the employees in *Crowe* (with little supervision) were required to apply their medical knowledge in assessing, on a case-by-case basis, whether under the applicable guidelines, the requested medical treatment or procedure was medically necessary. Mr. Deasy, in contrast, was actively supervised by the patient's physician or RN, and was not asked to interpret medical records or provide health care recommendations. (Ex. 16 at ¶¶6-8.)

*Dep't of Corrs.,* 942 F.2d 1562, 1565 (11th Cir. 1991) ("[T]he determinative factor is the job requirement and not the education in fact acquired by the employee."); *see also Kadden v. VisuaLex, LLC,* 910 F.Supp.2d 523, 539–40 (S.D.N.Y. 2012) (holding graphics consultant with law degree was not an exempt learned professional where job did not require advanced legal training).

11.     The regulation provides the following explanation of the phrase "customarily acquired by prolonged course of specialized knowledge":

> The phrase "customarily acquired by a prolonged course of specialized instruction" restricts the exemption to professions **where specialized academic training is a standard prerequisite for entrance into the profession. The best prima facie evidence that an employee meets this requirement is the possession of the appropriate academic degree.** However, the word "customarily" means that the exemption is also available to employees in such professions who have substantially the same knowledge level and perform substantially the same work as the degreed employees, but who attained the advanced knowledge through a combination of work experience and intellectual instruction. Thus, for example, the learned professional exemption is available to the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry. However, the learned professional exemption is not available for occupations that customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes. The learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction.

29 C.F.R. § 541.301(d) (emphasis added).

12.     The regulations also address nurses specifically, concluding that generally LPNs are not required to have the specialized advanced academic degree necessary to meet the duties requirement for the learned professional exemption to apply:

> Registered nurses who are registered by the appropriate State examining board generally meet the duties requirements for the learned professional exemption.

7

> **Licensed practical nurses and other similar health care employees, however, generally do not qualify as exempt learned professionals because possession of a specialized advanced academic degree is not a standard prerequisite for entry into such occupations.**

29 C.F.R. § 541.301(e)(2) (emphasis added); *see also* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed.Reg. 22,122, 22,153 (Apr. 23, 2004) (to be codified at 29 C.F.R. pt. 541) (hereinafter "Defining Exemptions") ("The Department's long-standing position is that RNs satisfy the duties test for exempt learned professionals, but LPNs do not. As re-emphasized by the Administrator in an October 19, 1999 Opinion Letter, 'in virtually every case, licensed practical nurses cannot be considered exempt, bona fide, professionals.' " (citation omitted)).

13. Despite these regulations, Defendant argues in this case that the educational requirement is satisfied because of the minimum qualifications Optimal requires of its LPNs, including Mr. Deasy. These qualifications are set forth in pages 12-13 of Defendant's Motion for Summary Judgment (and in Exhibit 15 to the Motion), and they are undisputed. As to education, Optimal requires two things: (1) all LPNs at Optimal must have graduated from an approved School of Vocational Nursing; and (2) all LPNs must have obtained an LPN license. (Mot. at 12.)[2] These education and licensure requirements, however, are insufficient as a matter of law to satisfy the educational requirement of the learned professional exemption.

14. In the closely analogous case of *Clark*, 44 F.Supp.3d at 678-70, the court was asked to address whether case manager nurses met the educational requirement of the learned

---

[2] According to the Colorado Board of Nursing in Colorado it takes between 9 and 11 months to obtain a certificate from an approved LPN program. (Ex. 17, Scope of Practice excerpt from Colorado Department of Regulatory Agencies, Board of Nursing, website.)

professional exemption. In that case, the case manager position required that the nurses have, at a minimum, attended nursing school and obtained an LVN (the functional equivalent of an LPN in Texas) or LPN license, essentially identical to Optimal's requirements for its LPNs, like Mr. Deasy. In finding that this did not satisfy the educational requirements of the learned professional exemption, the court reasoned as follows:

> Some education beyond high school level is not the same as "a prolonged course of specialized intellectual instruction." *See* 29 C.F.R. § 541.301(d). The regulations expressly state the "best prima facie evidence" the educational requirement is met "is possession of the appropriate academic **degree**." *Id.* (emphasis added). LVNs do not necessarily hold any academic degree. The LVN program may be completed, and a license obtained, without earning any academic degree whatsoever. The Department of Labor historically treats LPNs as *non-exempt,* which is strong evidence the additional instruction LPNs receive beyond the high school level is insufficient to qualify them for the learned professional exemption. *See* Defining Exemptions, 69 Fed.Reg. at 22, 153 ("LPNs and LVNs are not required to have an advanced degree or undergo a prolonged course of study in a recognized field of science or learning."); *see also Vela v. City of Hous.,* 276 F.3d 659, 675 (5th Cir. 2001) (holding paramedics and EMTs do not qualify as learned professionals because no "college degree" is required for the job, and course of study requiring "880 hours of specialized training" was insufficient to meet educational requirement).[3]

15. Defendant next argues that even if the nursing program is insufficient standing alone, its requirement that LPNs have one year of experience shows its LPNs are learned professionals. This argument too is incorrect. Although the regulations recognize the term "customarily" encompasses employees "who attained the advanced knowledge through a

---

[3] While Defendant also argues that Mr. Deasy's IV certification provides additional support for the educational requirement being met, this is not so. To start, the fact that Mr. Deasy had the IV Certification cannot be considered because it was not a job requirement. *See Clark*, 44 F.Supp.3d at 679 (W.D. Tex. 2014); *Young,* 586 F.3d at 206; *Dybach,* 942 F.2d at 1565; *Kadden*, 910 F.Supp.2d at 539-40. Even if it was a requirement, the additional 60 hours necessary to obtain the IV Certification (*see* Mot. at p. 13), is not a "prolonged course of specialized intellectual instruction" sufficient to satisfy the educational requirements. *See* 29 C.F.R. § 541.301(d).

combination of work experience and intellectual instruction," LPNs do not fall within this caveat. *See* 29 C.F.R. § 541.301(d). The regulations clarify the "customarily" language exists to capture, for example, "the occasional lawyer who has not gone to law school." *Id.* Most lawyers possess law degrees, and thus the rare practicing lawyer without such a degree exists as an outlier of presumably equal training operating in a field traditionally occupied by learned professionals. Moreover, this caveat captures only those individuals who operate "in a field of science or learning where specialized academic training is a standard prerequisite for entrance into the profession." *Id.* While medicine is such a profession, not all persons working in the medical field are learned medical professionals. *See id.* ("Thus, the learned professional exemption is available for lawyers, doctors and engineers, but not for skilled tradespersons, technicians, beauticians or **licensed practical nurses, as none of these occupations require specialized academic training at the level intended by the regulations as a standard prerequisite for entrance into the profession.***"* (emphasis added)). Finally, "[t]he learned professional exemption also does not apply to occupations in which **most employees have acquired their skill by experience rather than by advanced intellectual instruction."** 29 C.F.R. § 541.301(d) (emphasis added). Because LPNs do not undergo the kind of advanced instruction contemplated by the exemption, the advanced knowledge they bring to the position is primarily a result of their experience. The learned professional exemption was not intended to cover such employees. *See* Defining Exemptions, 69 Fed.Reg. at 22, 153 ("The Department further clarifies that LPNs and other similar health care employees generally do not qualify as exempt learned professionals*,* **regardless of work experience and training***,* because possession of a specialized advanced academic degree is not a standard prerequisite for entry into such occupations." (emphasis added)); *see also Clark*, 44

F.Supp.3d at 680-81 (finding that employer's requirement that nurse also have two to three years of clinical experience does not push the nurses into the category of learned professionals).

16. For the reasons set forth above, Defendant has failed to establish that Mr. Deasy was exempt from the overtime requirements of the FLSA under the "learned professional" exemption. Therefore, the Court should deny Defendant's Motion for Summary Judgment.

Respectfully submitted this 26th day of September, 2017.

        ANDERSON BARKLEY, LLC

        s/ Jeanine M. Anderson
        *Jeanine M. Anderson*
        Anderson Barkley, LLC
        3900 E. Mexico Ave., Suite 300
        Denver, CO 80210
        (720) 506-1766
        Jeanine@AndersonBarkleyLaw.com
        Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of September, 2017, a true and correct copy of the foregoing was filed on ECF and electronically served via email on:

Troy Rackham
Matthew Broderick
Fennmore Craig, P.C.
1700 Lincoln Street, Suite 2400
Denver, CO 80203
Trackham@fclaw.com
Mbroderick@fclaw.com

        s/Jeanine M. Anderson

12